UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DARON EDISON,

                    Plaintiff,

vs.                                Case No.  2:05-cv-307-FtM-29SPC

TOMMY  DOUBERLEY;  BRENDA  WILLIAMS;
MR. LOVELL,

                    Defendants.

_____


**OPINION AND ORDER**

This matter comes before the Court upon review of Defendants'
Motion for Summary Judgment (Doc. #37,[1] "Defendants' Motion") and
Memorandum of Law in Support of Defendants' Motion for Summary
Judgment (Doc. #39, "Defendants' Memorandum") filed on behalf of
Defendants Douberley, Williams, and Lovell on January 30, 2008
"Defendants' Motion").  Defendants attach the following exhibits in
support of their Motion to their Memorandum:

    Affidavit of Tommy Douberley ("Defs. Exh. A");

    Affidavit of Brenda Williams ("Defs. Exh. B");

    Affidavit of Timothy Lovell ("Defs. Exh. C");

    Letter to Plaintiff from Williams, dated April 27, 2005
    ("Defs. Exh. D");

_____

        [1]Defendants filed what appears to be a duplicate Motion for
Summary Judgment (Doc. #36) the same day. The Court will deem the
earlier filed Motion mooted by the later filed Motion (Doc. #37).

Plaintiff's Answer to Second Interrogatories ("Defs. Exh. E");

Rules of the Department of Corrections ("D.O.C"), Chapter 33-602, Security Operations, §33-602.201 ("Defs. Exh. F"); and

Inmate Participation Program for Plaintiff("Defs. Exh. G").

The Court advised Plaintiff how to respond to a motion for summary judgment, and directed Plaintiff to file a response. <u>See</u> Order of Court dated February 4, 2008 (Doc. #40).  After being granted an extension of time, <u>see</u> Order of Court dated February 21, 2008 (Doc. #43), Plaintiff filed a Memorandum in Opposition to Defendants' Motion for Summary Judgment on February 25, 2008 (Doc. #44, "Plaintiff's Opposition").  Plaintiff attaches the following exhibits in support of his Opposition to his Memorandum:

Affidavit of Plaintiff ("Pl. Exh. A"); and

Florida Department of Corrections Procedure No. 604.101 Re: American with Disabilities Act Provision for Inmates ("Pl. Exh. B").

Upon review of the record, the Court, noting that the grievance forms referenced in and attached to the Complaint were incomplete, directed the Defendants to provide the Court with all documents related to Plaintiff's grievance regarding the instant claim.  <u>See</u> August 7, 2008 Order of Court (Doc. #52).  On August 11, 2008, Defendants filed copies of Plaintiff's grievances and the

Departments' responses to Plaintiff's grievances (Doc. #53-2) regarding the subject of the instant Complaint.[2]  This matter is now ripe for review.

## I. Background

Plaintiff, Daron Edison ("Plaintiff"), filed a *pro se* civil rights complaint form (Doc. #1, "Complaint") alleging violations of the American With Disabilities Act, 42 U.S.C. §§ 12101-12214 ("ADA").  Complaint at 8.[3]  In particular, the Complaint alleges violations of Title II and Title III of the ADA.  Id.  The events giving rise to the incident occurred while Edison, who is incarcerated, was confined at Moore Haven Correctional Facility. See generally id.  The Complaint identifies the following as

_____

[2]Although Defendants raise Plaintiff's failure to exhaust his administrative remedies with respect to his claim as an affirmative defense in their responsive pleadings, see Defs.' Answers and Affirmative Defenses, Seventh Affirmative Defense at 3 (Docs. ##24-26), Defendants do not raise the exhaustion issue herein. Exhaustion is an affirmative defense and is not jurisdictional. Jones v. Bock, 549 U.S. 199, 127 S. Ct. 910, 922 (2007); Woodford v. NGO, 548 U.S. 81, 101 (2006). It is clear from the grievances submitted that Plaintiff exhausted his property claim regarding the alleged destruction of his audio tapes. There is no evidence, however, that Plaintiff exhausted his accommodation or discrimination claim under the ADA as required by 42 U.S.C. Section 1997(e)(a). Nonetheless, because Defendants do not raise the exhaustion issue, the Court must treat Plaintiff's claim as exhausted for purposes of this Motion.

[3]The page numbers referenced herein are to the page of the identified document as it appears on the Court's case management electronic computer filing system.

Defendants: Tommy Douberley ("Douberley"), the Warden at Moore Haven; Brenda Williams ("Williams"), the Programs Supervisor Warden of Moore Haven; and Officer Lovell, a correctional officer employed at Moore Haven. According to the Complaint, Edison, is "legally blind." Id. Plaintiff avers that upon his arrival at Moore Haven, up until the time he filed the Complaint, Defendants failed to provide with him adequate accommodations for his disability. See generally Complaint. In particular, on June 14, 2004, when Plaintiff arrived at Moore Haven, Defendant Lovell "confiscated Plaintiff's tape recorder, gospel tapes and audio books." Id. at 10. Plaintiff states that his "numerous request[s] to have these learning tools in the form of audio-books returned to Plaintiff were denied." Id. at 14. Further, "any request for an alternative means has went [sic] unheeded as well." Id.

According to the Complaint, Defendant Williams "refused to provide adequate accommodation to Plaintiff so that Plaintiff is not excluded or therefore denied from participating in the benefits of services, programs or activities that are afforded others." Id. Plaintiff notes that other disabled inmates "are provided with wheelchairs, walkers, hearing aids, etc., Plaintiff has nothing to aid his blindness." Id. For instance, Plaintiff avers that "other inmates are provided assistants to push their wheelchairs and obstacles are moved to accommodate them in classrooms and other

daily functions." Id.   Finally, the Complaint states that Defendant Douberley "condoned this discrimination having full knowledge that these principled rules are unheeded in the current policies at Moore Haven." Id.   Edison seeks injunctive relief "from current policies and to conform to ADA requisites," and $150,000 in compensatory damages for "pain and suffering." Id. at 15.[4]

Defendants seek summary judgment on the basis that the ADA does not provide for individual liability. Defendants' Motion, pp.6-7.   Further, to the extent that the Defendants are sued in their official capacities, Defendants argue that as employees of GEO Care, Group, Inc. ("GEO"), a private entity, they are entitled to summary judgment because GEO is not a "public entity" subject to the ADA. Id., pp. 8-9. Alternatively, Defendants maintain that the undisputed evidence demonstrates that Defendants complied with the ADA. Id., pp. 9-10.

## II. Standard for Review

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue at to any material fact and that the moving party is entitled to judgment as a matter of

---

[4]The page numbers referenced herein are to the page of the identified document as it appears on the Court's case management electronic computer filing system.

law." Fed. R. Civ. P. 56(c).  An issue is "genuine" if there is sufficient evidence such that a reasonable jury could return a verdict for either party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  A fact is "material" if it may affect the outcome of the suit under governing law. <u>Id.</u>  The moving party bears the burden of identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, and/or affidavits which it believes demonstrate the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986); <u>Hickson Corp. v. Northern Crossarm Co., Inc.</u>, 357 F.3d 1256, 1259-60 (11th Cir. 2004).  The standard for creating a genuine dispute of material fact requires courts to "make all *reasonable* inferences in favor of the party opposing summary judgment, <u>Chapman v. Al Transp.</u>, 229 F.3d 1012, 1023 (11th Cir. 2000)(en banc) (emphasis added), not to make all *possible* inferences in the non-moving party's favor.  Further, "allegations in affidavits must be based on personal knowledge, and not be based, even in part, 'upon information and belief.'" <u>Pitman v. Tucker</u>, 213 F.3d 867, 870 (11th Cir. 2008)(quoting <u>Pace v. Capobianco</u>, 283 F. 3d 1275, 1278 (11th Cir. 2002)).  Rule 56(e) provides that an affidavit submitted in conjunction with a summary judgment motion "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is

competent to testify on the matters stated." Fed. R. Civ. P. 56(e).

To avoid the entry of summary judgment, a party faced with a properly supported summary judgment motion "bears the burden of persuasion" and must come forward with extrinsic evidence, i.e., affidavits, depositions, answers to interrogatories, and/or admissions, and "set forth specific facts showing that there is a genuine issue for trial." Beard v. Banks, 548 U.S. 521, 126 S. Ct. 2572, 2578 (2006)(citations omitted); Celotex, 477 U.S. at 322; Hilburn v. Murata Electronics North America, Inc., 181 F.3d 1220, 1225 (11th Cir. 1999). If there is a conflict in the evidence, the non-moving party's evidence is to be believed and "all justifiable inferences" must be drawn in favor of the non-moving party. Beard, 126 S. Ct. at 2578 (citations omitted); Shotz v. City of Plantation, Fl., 344 F.3d 1161, 1164 (11th Cir. 2003). "A court need not permit a case to go to a jury, however, when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible.'" Cuesta v. School Bd. of Miami-Dade County, 285 F.3d 962, 970 (11th Cir. 2002) (citations omitted). Nor are conclusory allegations based on subjective beliefs sufficient to create a genuine issue of material fact. Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1217 (11th Cir. 2000). "When opposing parties tell two different stories, one of which is

-7-

blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling in a motion for summary judgment." Scott v. Harris ___ U.S. ___, 127 S. Ct. 1769, 1776 (2007).  In the summary judgment context, however, the Court must construe *pro se* pleadings more liberally than those of a party represented by an attorney.  Loren v. Sasser, 309 F.3d 1296, 1301 (11th Cir. 2002).

### III.  Applicable Law

Title II of the American with Disabilities Act ("ADA'), 42 U.S.C. § 12131 et seq.,  provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." § 12132 (2000 ed.).  A "'qualified individual with a disability'" is defined as "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." § 12131(2).  The Act defines " 'public entity' " to include "any State or local government" and "any department,

agency, special purpose district, or other instrumentality of a
State, or States or local government." § 12131(1). The Supreme
Court has held that term "public entity" includes state prisons.
See Pennsylvania Dept. of Corrections v. Yeskey, 524 U.S. 206, 210
(1998). In particular, the Court held that a state inmate who was
confined in a state facility could bring a Title II-ADA claim
against the department of corrections if the inmate is denied
participation in an activity provided in state prison. Id. at 211.
Title II authorizes suits by private citizens for money damages
against public entities that violate § 12132. See 42 U.S.C. §
12133 (incorporating by reference 29 U.S.C. § 794a).

Title III of the ADA prohibits discrimination in places of
public accommodation against persons with disabilities. 42 U.S.C.
§ 12182(a). Discrimination includes "a failure to remove
architectural barriers, and communication barriers that are
structural in nature, in existing facilities . . . where such
removal is readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv).
Title III of the ADA defines "public accommodation" as follows:

> The following private entities are considered public
> accommodations for purposes of this subchapter, if the
> operations of such entities affect commerce-
>
>> (A) an inn, hotel, motel, or other place of
>> lodging, except for an establishment located
>> within a building that contains not more than
>> five rooms for rent or hire and that is
>> actually occupied by the proprietor of such

establishment as the residence of such proprietor;

(B) a restaurant, bar, or other establishment serving food or drink;

(C) a motion picture house, theater, concert hall, stadium, or other place of exhibition or entertainment;

(D) an auditorium, convention center, lecture hall, or other place of public gathering;

(E) a bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment;

(F) a Laundromat, dry-cleaner, bank, barber shop, beauty shop, travel service, shoe repair service, funeral parlor, gas station, office of an accountant or lawyer, pharmacy, insurance office, professional office of a health care provider, hospital, or other service establishment;

(G) a terminal, depot, or other station used for specified public transportation;

(H) a museum, library, gallery, or other place of public display or collection;

(I) a park, zoo, amusement park, or other place of recreation;

(J) a nursery, elementary, secondary, undergraduate, or postgraduate private school, or other place of education;

(K) a day care center, senior citizen center, homeless shelter, food bank, adoption agency, or other social service center establishment; and

(L) a gymnasium, health spa, bowling alley,

golf course, or other place of exercise or
recreation.

42 U.S.C. § 12181(7).

Under the ADA, "any person who is being subjected to
discrimination on the basis of disability" has a private right of
action for injunctive relief.  42 U.S.C. § 12188(a)(1).

IV.  Findings of Fact and Conclusions of Law

At the outset, the Court does not find Title III relevant to
the instant action.  Plaintiff does not point to any authority in
which a jail has been held subject to the protections of Title III.
Nor has the Court located any case which support imposing liability
upon prisons under Title III.  To the contrary, legal authority
exists to suggest that a jail or prison facility does not
constitute a place of "public accommodation" as defined in the
applicable statutory provisions.  See Morgan v. Mississippi, Slip
Copy, 2008 WL 44981 *5-6 (S.D. Miss 2008)(finding public
accommodation under Title III to not include state prison); Brown
v. King County Dept. of Adult Corrections, 1998 WL 1120381 *6
(determining that county correctional facility is not considered a
place of public accommodation under state statute).  Consequently,
the Court finds similarly, that the categories which are regarded
as places of public accommodation do not arguably encompass a penal
facility.

-11-

Further, as an initial matter, the Court finds that Plaintiff's request for injunctive relief is moot due to Plaintiff's transfer from Moore Haven Correctional Facility to Dade Correction Institution on August 24, 2006. See Plaintiff's Response to Show Cause Order filed May 23, 2007 (Doc. #31). In particular, the Eleventh Circuit Court of Appeals has held that any claims concerning the conditions of an inmate's confinement made by an inmate requesting injunctive relief become moot once the prisoner is transferred to another facility. Smith v. Allen, 502 F.3d 1255, 1267 (11th Cir. 2007). Nonetheless, Plaintiff's demand for monetary damages is not mooted by his transfer. Id.

Consequently, the Court will evaluate Plaintiff's claim for monetary damages against Defendants Lovell, Williams and Douberley under Title II of the ADA. In order to state a claim under the statute, a plaintiff must prove 1) that he is a qualified individual with a disability; 2) that he was excluded from participation or denied benefits of a public entity's services, programs, or activities, or otherwise discriminated against by the public entity; and 3) the exclusion, denial of benefits, or discrimination was due to plaintiff's disability. Shotz v. Cates, 256 F.3d 1077, 1079 (11th Cir. 2001)(citing 42 U.S.C. § 12132).

Defendants do not contest that Plaintiff meets the first prong of the test -- that Plaintiff is a "qualified individual with a

-12-

disability." <u>See</u> Motion.  Defendants do dispute, however, whether
in their individual or official capacities they can be subject to
Title II.  <u>See</u> <u>generally</u> <u>id.</u>  Defendants correctly point out that
to the extent that Plaintiff brings his claims against any of the
Defendants in their individual capacity, the claims must be
dismissed.[5]  Motion at 7-8.  Title II only provides for a cause of
action against a "public entity" and not individual acting under
color of state law.   42 U.S.C. § 12132; <u>see</u> <u>also</u> <u>Mason v.</u>
<u>Stallings</u>, 82 F.3d 1007, 1009 (11th Cir. 2007)(holding that the ADA
"does not provide for individual liability, only employer
liability.").  Thus, only the entity which employed Defendants, GEO
Group, Inc., may be held liable under Title II.  Defendants contend
that GEO, due to its status as a <u>private</u> entity, is not subject to
Title II.  Motion at 8 (emphasis added).

It is undisputed that GEO is a private corporation, which
manages correctional institutions throughout North America.  Defs.
Exhs. A, ¶3, B, ¶3, and C, ¶3.  Neither the Supreme Court nor the
Eleventh Circuit has had the occasion to address whether a private
contractor who manages correctional facilities, such a GEO, would
be deemed a public entity subject to Title II of the ADA.  Although
the Supreme Court in <u>Pennsylvania Dept. of Corrections v. Yeskey</u>

---

[5]Plaintiff rejects the argument that he is suing the Defendants
in their individual capacities.  Reply at 5.

definitively found that "[s]tate prisons fall squarely within the statutory definition of 'public entity'," the Court did not address whether the statutory text should be construed to include a private entity who contractually manages a correctional facility on behalf of a state.   524 U.S. at 210.

Defendants do not point the Court to any legal authority on this issue.   Independent research by the Court has revealed legal authority in support of Defendants' position.   In Wynott v. Correctional Med. Servs., Inc., Case No. 08-61-P-S, 2008 WL 2061385 (D. Me. May 13, 2008), the district court, guided by the decision of three other district courts, concluded that a private contractor, who provides medical services to inmates at the county jail pursuant to a contract with the county, were "not public entities and, thus, not subject to Title II claims under the ADA." Id. at *2 (citing Hahn v. Linn County, 191 F.Supp.2d 1051, 1054-55 (N.D. Iowa 2002)); Scaggs v. New York Dept. Of Educ., Case No. 06-cv-0799 (JFB(WP)), 2007 WL 1456221, 167 n. 14 (E.D.N.Y. May 16, 2007).   See also Scherer v. Pa. Dept. of Corr., Case No. 3:2004-191, 2007 WL 4111412 *29 (W.D.Pa. Nov. 16, 2007)(recognizing "that inmates, confined to a DOC facility, have no other choice but to receive psychiatric care from the private contractor present in those institutions" the court found private contractor at correctional facility not subject to ADA.   Further, the court

acknowledged that although "a state or local government can avoid all obligations under the ADA by contracting for such services with private individuals and other entities, such an issue is a matter of policy that is not properly considered in engaging in statutory construction of otherwise clear language."). See also Pitts v. Hayman, Case No. 07-2256(MCL), 2008 WL 1776568 *10, n.5 (D.N.J. April 16, 2008)(noting that "[a] private company that contracts with a government department or agency, like [jail's health care provider], does not constitute a 'public entity'"); O'Connor v. Metro Ride, Inc., 87 F. Supp. 2d 894, 900 (D. Minn. 2000)(concluding that private transportation corporation that provides public transportation pursuant to government contract is not subject to Title II of ADA); Morgan v. Mississippi, 2008 WL 449861 *5 (determining that private, not for profit corporation which provides accreditation for correctional facilities is not a "public entity" as defined in Title II).   The Court, despite exhaustive research,  has located no legal authority to the contrary, and the case cited by Plaintiff on this issue is clearly distinguishable.[6]

_____

[6]Plaintiff relies upon West v. Atkins, 487 U.S. 42 (1988) in support of his argument that GEO should be held a "public entity." Reply at 6.  In West, the Court analyzed whether a private doctor, who is employed by state to provide medical services to inmates at a state prison hospital, acts "under color of state law" for § 1983 purposes.

Although not dispositive of the issue, the courts have been reluctant to extend state and governmental immunity to private entities simply because they perform governmental functions.  For instance, the Supreme Court has concluded that, unlike government employed prison guards, private prison guard contractors, such as GEO, are not entitled to qualified immunity under 42 U.S.C. § 1983.  Richardson v. McKnight, 521 U.S. 399, 412 (1997). The Court in Richardson found compelling the fact that these private companies are "systemically organized to assume a major lengthy administrative task (managing an institution) with limited direct supervision by the government."  Id.  Similarly, the Eleventh Circuit has refused to extend qualified immunity to a county prison's private health care director, because the County did not exercise control over the  doctor, noting that the county could not hire or fire the contractor employees.  Hinson v. Edmond, 192 F.3d 1342, 1346-47 (11th Cir. 1999).  The Eleventh Amendment to the United States Constitution grants States and entities acting as an "'arm of the State'" from suits brought by private citizens in federal court.  Powell v. Barrett, 496 F.3d 1288, 1304 (11th Cir. 2007)(quotations omitted); U.S. Const. Amend XI.  In determining whether a defendant acts as an "arm of the State," the Court examines four factors: "(1) how [S]tate law defines the entity; (2) what degree of control the State maintains over the entity; (3)

-16-

where the entity derives its funds; and (4) who is responsible for judgments against the entity." <u>Id.</u> at 1304.   Thus, Eleventh Amendment immunity for a private contractor is not automatic just because the contractor performs a governmental function. <u>Rosario v. Am. Corrective Counseling Servs., Inc.</u> 506 F.3d 1039, 1047 (11th Cir. 2007).

In light of prevalent legal authority, the Court agrees that GEO, due to its status as a private entity, is not subject to Title II of the ADA.   Thus, the court will grant Defendants summary judgment on this issue.

The Court recognizes the dilemma in which Plaintiff finds himself.  Although Plaintiff is in the custody of the Secretary of the Florida Department of Corrections, he is housed in a correctional facility whose management has been privatized. Despite Plaintiff's predicament, he does not appear to be wholly without a remedy.   Due to Plaintiff's custodial status, and the fact that the Secretary, through a properly exhausted administrative grievance process, would become aware of any discriminatory conduct to a disabled inmate despite being housed in a private run facility, it appears that Plaintiff may be able to bring a Title II action against the Department of Corrections, as the viable "public entity."

Because the Court finds that Defendants are not subject to Title II of the ADA, the Court need not determine whether the record raises an issue of material fact as to whether Plaintiff was denied any benefits of any services, programs or activities offered at Moore Haven, or was otherwise subjected to any discrimination by reason of Plaintiff's blindness.  Any other issues not addressed herein are deemed to be without merit

ACCORDINGLY, it is hereby

**ORDERED**:

1.   Defendants' first filed Motion for Summary Judgment (Doc. #36) is **DENIED as moot.**

2.   Defendants' second filed Motion for Summary Judgment (Doc. #37) is **GRANTED.**

3.   The **Clerk of Court** shall enter judgment, terminate any pending motions, and close this file.

**DONE AND ORDERED** in Fort Myers, Florida, on this ___9th___ day of September, 2008.

_John E. Steele_
JOHN E. STEELE
United States District Judge

SA: hmk
Copies: All Parties of Record

-18-